[No. 9820. Department Two. May 11, 1912.]

S. D. KINDER et al., Appellants, v. SCHOOL DISTRICT No. 126 et al., Respondents.[1]

SCHOOLS AND SCHOOL DISTRICTS—BOND ELECTION—BALLOTS—FORM —SUFFICIENCY. In a school bond election, a ballot so printed on a narrow slip of paper that it may be torn in the middle, leaving the voter to deposit one-half with the words "Bonds, Yes" or "Bonds, No," is sufficiently regular in form, under the statute requiring the ballots to contain the words " 'Bonds, Yes,' or 'Bonds, No.' " where the voter could so fold the portion voted as to preserve the secrecy of the vote.

SAME—METHOD OF VOTING—DEPOSIT OF BALLOT. Under Rem. & Bal. Code, § 4660, requiring that one of the judges pronounce the name of any person offering to vote, at a school bond election, and

[1]Reported in 123 Pac. 610.

"he shall receive the ballot  .  .  .  and deposit the same" the judge
pronouncing the name shall receive and deposit the elector's ballot.

SAME—RETURNS—IMPEACHMENT—EVIDENCE — SUFFICIENCY.    Elec-
tion returns showing that only 37 out of 103 votes were cast against
the issuance of school bonds, are not sufficiently impeached by the
affidavits of 46 voters to the effect that they voted against the issue,
where the ballots had been destroyed, and it appears that certain of
such voters had made contradictory statements and others had made
no concealment when voting and it was testified that their ballots
were seen to be for bonds, and that the officers publicly counted the
ballots correctly after the election.

Appeal from a judgment of the superior court for Whit-
man county, Neill, J., entered August 1, 1911, upon findings
in favor of the defendants, in an action to enjoin an issue of
school bonds.   Affirmed.

*Hanna & Hanna*, for appellants.

*Pattison, Stotler & Pattison* and *J. M. McCrosky*, for re-
spondents.

PER CURIAM.—On May 20, 1911, an election was held in
school district No. 126, of Whitman county, to determine
whether the district should bond itself in the sum of $12,000
for the purpose of building a new school house.   The election
board made return to the proper officers to the effect that
103 votes were cast at such election, that 66 of such votes
were cast in favor of the proposition, and 37 against it.   The
returns showing the necessary three-fifths votes to be in favor
of the issuance of bonds, the board of directors proceeded to
issue them, when the present action was begun to enjoin
them from so doing.

In their complaint, the plaintiffs attacked both the regu-
larity of the election proceedings and the correctness of the
return.   It was alleged that the ballots furnished the electors
for use at the election failed to comply with the requirements
of the statute, in that they were not uniform in size or shape,
contained written matter on them not authorized, and were
distinguishable, so that the judges of the election could tell

which way the elector voted from the appearance of the ballot. It was further alleged that the electors were not permitted to put the ballots into the ballot box themselves, but were required to hand them to one of the judges of the election; and that the return made by the judges of the election was incorrect in that 46 at least of the 103 votes cast at the election were cast against the issuance of bonds, and that the proposition did not in fact receive the three-fifths votes necessary to give it effect under the statute.

Issue was taken upon the complaint, and a trial had, which resulted in a judgment to the effect that the plaintiffs were not entitled to injunctive relief. The plaintiffs have appealed.

The statutes relating to bond elections in school districts do not prescribe any form of ballot for use at such elections, other than that it is required that the ballots "must contain the words 'bonds, yes,' or 'bonds, no'." The ballots provided by the election board for the use of the electors at the election here in question were in the following form:

| Bonds, Yes. | Bonds, No. |
|---|---|

Calling the direction from top to bottom the length of the ballot, and the direction from side to side, its width, the ballot was about 1 inch in length and 8½ inches wide. They were made from white paper, were practically of uniform size and quality, and contained no other matter than the words above indicated. When an elector applied to vote, he was handed one of the ballots so provided, and instructed to tear it down the middle and vote the part that expressed his preference. After the ballot had thus been prepared by the voter, it was received from the voter by one of the judges and deposited in the ballot box, and the voter's name registered in the list of voters.

It is contended by the appellant that the statute requiring the ballot to contain the words "bonds, yes, or bonds, no." does not express the will of the legislature; that it was meant

that the ballots should contain both of the terms "bonds, yes," and "bonds, no," so that the voter could indicate his preference by making a mark after, or by erasing, the one term or the other. The general text of the statute indicates, we think, that the legislature did intend to use the word "and" instead of the word "or," in the clause of the statute we have quoted; and we think also that a ballot prepared in the form indicated by the appellants would be a sufficient compliance with the terms of the statute, but we hold that the form used in the present instance is sufficiently regular. As the legislature has not seen fit to prescribe a form of ballot for use at such elections, it follows that any form of ballot by which the elector can clearly, secretly, and without serious danger of mistake, express his intent, is sufficient in form. We see no reason why the ballot here used is not sufficient in these respects. The intent of the voter is expressed as clearly by tearing off the words that do not express his wish as they would be by crossing such words with a pencil or making a mark after the words that express his wish. Nor do we see any reason why a secret vote cannot be had with a ballot in the form here used. Certainly the portion voted could be folded so as to hide the words upon it, and no more could be done with a ballot more perfect in form. In fact, we think that the evidence demonstrates that no one who desired to conceal the manner in which he voted had any difficulty in so doing.

It is not an objection to the validity of the election that the elector was required to hand the ballot to one of the judges of the election after he had prepared it for voting, instead of being permitted to deposit it himself into the ballot box. On the contrary, such is the procedure the statute contemplates. It is provided that whenever any person offers to vote, "one of the judges shall pronounce his name in an audible voice, and if there be no objection to the qualifications of such person as an elector, he shall receive the ballot in the presence of the election board and deposit the

same without being opened or examined in the ballot box."
The pronoun "he" in the phrase "he shall receive," clearly
refers to the antecedent phrase "one of the judges," and
means that the judge pronouncing the name of the elector
shall receive the elector's ballot from the elector and shall
himself deposit it in the ballot box.

At the preliminary hearing on the application for the in-
junction, the plaintiffs produced the affidavits of forty-six
of the persons whose names appear on the list of voters re-
turned by the election board to the effect that they voted
against the issuance of bonds. On the final hearing it was
stipulated that these persons, if called and sworn, would tes-
tify to the same effect. As the statute requires the assent
of three-fifths of the voters voting at such an election to
authorize the issuance of bonds, it is plain that, if these per-
sons are to be counted in the negative, the issue must fail for
want of authorization. The ballots were destroyed before
the controversy arose, so that there is no way of definitely de-
termining the question, but the trial court heard both sides
and ruled that there was no ground for concluding that the
return was incorrect. We think the evidence justifies the con-
clusion. Certain of the persons so testifying were shown to
have made contradictory statements concerning the manner
in which they voted, and certain others made no attempt at
concealment when voting, and their ballots were seen prior
to the time they were deposited in the ballot box, and it was
testified that they voted contrary to the manner stated by
them in their affidavits. Moreover, the election officers were
not charged with having fraudulently manipulated the re-
turns, nor was any attempt made to prove fraud against
them. On the other hand, the election officers testified that
the ballots were taken from the ballot box and counted pub-
licly in the presence of a number of persons who stayed to
learn the result of the vote; that they were counted correctly,
and in the manner ballots are usually counted, and that the
returns correctly showed the result of the count. We think

the preponderance of the evidence supports the conclusion of the trial judge, and the judgment will stand affirmed.